# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THOMAS KING,

    Trustee-Appellant,

v.                                              Case No. 11-C-573

MICHAEL AND KAREN ROBENHORST,

    Appellees-Defendants.

## DECISION AND ORDER

Michael and Karen Robenhorst ("Debtors") filed a Chapter 13 petition in April 2010. After their mortgage lender filed an arrearage claim, the Debtors filed an amended plan that increased their payments to account for the arrearage. The trustee objected to the plan on the belief that 50 percent of the Debtors' income tax refunds should be committed to the plan. The bankruptcy court overruled the objection and confirmed the plan modification. The trustee now appeals. For the reasons given below, the decision of the bankruptcy court will be affirmed.

The question posed involves how debtors account for their payment of taxes and their receipt of tax refunds. By tradition in this district, debtors with below-average incomes are required to commit one-half of their tax refunds to the payment of their creditors. Debtors with above-average incomes do not have to commit any portion of their refunds. Although this seems counter-intuitive, the explanation lies in how the two classes of debtors account for their taxes. Below-average debtors deduct as an expense the amounts that are actually withheld from their paychecks. It is common that the amounts withheld are larger than the amounts they actually owe in taxes (hence

the tax refund). Thus, by counting the *withheld* amount rather than the actual tax ultimately owed, such debtors tend to overstate their expenses. Requiring that half of their tax refund be handed over to creditors partially cures that problem by turning over to creditors part of their overstated expenses. *See generally, In re Stimac,* 36 B.R. 889 (Bankr. E. D. 2007). It also reduces any incentive to engage in overwithholding to shield income from creditors. By contrast, above-average debtors deduct the amounts they actually owe in taxes rather than the amounts that are withheld. Thus, if they happen to get a refund, that is immaterial because they had not deducted any tax payments in excess of their actual tax liability. In other words, because their tax expense was not overstated from the beginning, there is no reason to earmark for creditors any amount refunded.

In the present case, the trustee wants to require that one-half of the debtors' tax refund be committed to the plan even though they are debtors with above-average incomes. Although the trustee does not dispute the original plan for leaving out the debtors' tax refunds, the trustee's position is that once the plan is modified, as here, one-half of all the tax refunds must be included in the plan in order to comply with the disposable income requirement of 11 U.S.C. § 1325.

Section 1325(b)(1) provides:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
. . .
  (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The trustee argues that this "disposable income" requirement of § 1325(b) should be applied every time there is a subsequent plan modification. The debtors' tax refund would qualify as

2

disposable income. The bankruptcy court rejected this notion on the grounds that § 1329, which governs modifications, does not incorporate or refer to § 1325(b). Section 1329 provides:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim
> . . .
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

The bankruptcy court relied on its previous ruling, in 2010, that modifications under § 1329 do not include the disposable income requirement of § 1325(b) because § 1329 incorporates other provisions but leaves out § 1325(b). *See In re Kearney,* 439 B.R. 694, 696 (Bkrtcy. E.D.Wis. 2010) ("'[t]he plain meaning of the statute supports the conclusion that modification is not subject to the disposable income test.'") (citing *In re Young,* 370 B.R. 799, 802 (Bankr.E.D.Wis.2007) and *In re Golek,* 308 B.R. 332, 336–37 (Bankr.N.D.Ill.2004)). Thus, the bankruptcy court concluded that any tax refunds received by the debtor would not need to be included in the amended plan.

The trustee argues that the disposable income test should be applied when the trustee objects to the modification. For support, the trustee relies on *In re Than,* a decision of the Ninth Circuit Bankruptcy Appellate Panel, which holds (the trustee asserts) that § 1325(b) is incorporated into § 1329 when the trustee objects. 215 B.R. 430 (BAP 9th Cir. 1997). However, the *Than* court did not so hold. Instead, it merely described the analysis of one bankruptcy court and then assumed (without deciding) that the court's analysis was correct. *Id.* at 437. The court even used the phrase "assuming *arguendo*" to make clear that it was not deciding the issue. (The *Than* court did not need to decide the issue because there was no objection to the plan at all.) In fact, a later panel in the same circuit observed that in *Than* "we left unresolved the applicability of § 1325(b) where an

3

objection to the modified plan has been made." *In re Sunahara,* 326 B.R. 768, 775 (BAP 9th Cir. 2005). Thus, the *Than* case does not stand for the position the trustee asserts, and the trustee's reliance on *Than* is both unpersuasive and misleading.

In fact, after *Than* the *Sunahara* court clarified its view that § 1325(b) should *not* be incorporated into the § 1329 analysis. After a lengthy and thorough review of the numerous cases that had dealt with the issue, the court concluded that it did not make sense to find that § 1329 "indirectly" incorporated the disposable income provision of § 1325(b), particularly when the statute appeared to deliberately *exclude* any reference to that section. 326 B.R. at 781. Instead, the proper approach is to include a disposable income analysis as a part of the good faith analysis, which is exactly what the bankruptcy court did in this case.

The Eighth Circuit's appellate panel also adopted this approach. That panel found that the plain language of the statute precluded judges, in effect, from adding § 1325(b) to the list of sections referenced in § 1329(b)(1) when Congress failed to do so itself. *In re Forbes*, 215 B.R. 183, 191-92 (8th Cir. BAP 1997).

Thus, two bankruptcy appellate panels have come down on the side of relying on the plain language of the statute. In addition, the Seventh Circuit has cautioned that the plain language of the statute should be applied, particularly in this context:

> The varying threshold standards adopted in the bankruptcy court decisions further underscore the need to apply the statutory language when it is clear and unambiguous. "[T]he various approaches to postconfirmation modification of chapter 13 bankruptcy plans are obscured in rhetoric, resulting in contradictory judicial approaches to postconfirmation modification of chapter 13 plans." Harry L. Deffebach, Postconfirmation Modification of Chapter 13 Plans: A Sheep in Wolf's Clothing, 9 Bank.Dev.J. 153 (1992). Such confusion illustrates the need to use the plain language of the statute, rather than a judicially created standard derived from legislative history.

*In re Witkowski,* 16 F.3d 739 (7th Cir. 1994) (construing § 1329).

4

Although there are policy reasons to want to include a debtor's tax return in a modified plan, and although some cases adopt such an approach (see *In re Sunahara,* 326 B.R. 768 (collecting cases)), the weight of authority appears to apply the plain language of the statute. That is certainly the practice in this district, which is informed by the Seventh Circuit's cautionary language in *Witkowski*. Accordingly, I conclude that incorporating § 1325(b) into § 1329 would be improper and that the disposable income test is not part of a modification under § 1329.[1]

Instead of using a disposable income analysis, the bankruptcy court applied the good faith standard of § 1325(a)(3).

> Before a bankruptcy court confirms a debtor's plan under Chapter 13, it must find that the plan was filed in good faith. See 11 U.S.C. § 1325(a)(3). "The provisions of 11 U.S.C. § 1325 ensure that a Chapter 13 plan ... will be properly scrutinized by the bankruptcy court before the plan is confirmed, mitigating the danger of abuse." In considering whether a plan is filed in good faith, the court asks of the debtor: "Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" "At base, this inquiry often comes down to a question of whether the filing is fundamentally unfair." Whether a plan or petition is filed in

---

[1] It is also somewhat questionable whether a refund to an above-average income debtor should even be counted as disposable income. As noted at the outset, when an above-average income debtor receives a tax refund, the amount of that refund does not adversely impact any creditors because the debtor has already accounted for his actual tax liability, not just his tax payments. This is in contrast to below-average income debtors, who deduct actual withholdings from their expenses. "Tax refunds are included in disposable income because they are an overstatement of an expense, not because they fall within the definition of 'current monthly income.'" *In re Diaz,* 2011 WL 4621448, *4 (Bkrtcy.C.D.Cal. 2011). Thus, while counting a tax refund as income to a below-average income debtor makes sense (because it cures an overstatement of expenses), it makes less sense when we are talking about debtors who count their actual tax liabilities rather than their tax withholdings. The above-average income debtor has no incentive to overwithhold because his withholdings are not his expenses. In essence, an overpayment of taxes is simply a no-interest loan to the government that has been repaid through the refund. It is money that had been in one pocket that is now placed in the debtor's other pocket: no transfer of wealth has occurred.

good faith is a question of fact based on the totality of the circumstances surrounding the proposed plan.

*In re Smith,* 286 F.3d 461, 466 (7th Cir. 2002) (citations omitted).

The trustee argues that the modification fails to comply with this standard because the debtor failed to include one-half of their tax refunds in the plan. Beyond that, the trustee offers no argument as to why the plan modification was not brought in good faith. The bankruptcy court engaged in a thorough analysis of the factors involved in a good faith analysis, and given that "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court," I am unable to conclude that the court erred. *Matter of Love,* 957 F.2d 1350, 1355 (7th Cir.1992). In particular, the court noted that the modification arose only after the mortgage holders filed claims in excess of original estimates. The trustee's objection is essentially a blanket objection to all debtors who do not include half of their tax refunds in the plan, whereas the good faith determination must be made on a case-by-case basis considering the factors the bankruptcy court identified. The bankruptcy court did not err in its good faith determination.

For the reasons given above, the decision of the bankruptcy is affirmed.

**SO ORDERED** this   22nd   day of November, 2011.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge